UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 1:24-cr-00081-KES-BAM-1 |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| Joseph Raymond Rocha, | |
| Defendant. | (Docs. 18, 24, 38) |

Defendant Joseph Raymond Rocha was indicted on April 25, 2024, for an alleged violation of 18 U.S.C. § 922(g)(1). Doc. 10 ("Indictment"). Rocha moves to dismiss the single count in the indictment on the grounds that it is unconstitutional under the Second Amendment. Docs. 24 ("Amended MTD"), 38 ("Mem."). The court held a hearing on September 16, 2024. Doc. 45. For the reasons stated below, the court denies the motion to dismiss.

**I.    BACKGROUND**

On March 21, 2024, two Fresno police officers stopped defendant Joseph Raymond Rocha after observing that the text message screen on his phone was open while he was driving. Doc. 1 ("Crim. Compl.") ¶ 6. One officer approached the driver-side window and asked Rocha for his driver's license. *Id.* ¶ 7. Rocha informed the officer that his driver's license was in the trunk of the vehicle, so the officer asked Rocha to step out. *Id.* Rocha did not comply with the officer's command, instead turning the ignition and attempting to put the vehicle into drive. *Id.* ¶ 9. The

1

officer reached in the window and managed to force the vehicle into park. *Id.* ¶¶ 9–10. Both officers then forcibly removed Rocha from the car and, after a struggle, placed him in handcuffs. *Id.* ¶¶ 10–15. While performing the arrest, the officers discovered a loaded 9mm handgun tucked into Rocha's waistband and later found additional bullets and magazines for the handgun in the vehicle. *Id.* ¶¶ 10, 13, 16–19.

On April 25, 2024, a grand jury charged Rocha with a single violation of 18 U.S.C. § 922(g)(1), which criminalizes the knowing possession of a firearm by a person with knowledge that he has previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Doc. 10 ("Indictment"). The Indictment alleges that Rocha knew he had ten such prior convictions, any of which would render him ineligible to possess a firearm under the plain language of § 922(g)(1): (1) carrying a loaded firearm in public in violation of California Penal Code § 29850, on or about July 9, 2018; (2) possession of a short-barreled rifle in violation of California Penal Code § 33215, on or about January 6, 2020; (3) evading a peace officer in violation of California Vehicle Code § 2800.2, on or about January 6, 2020; (4) unlawful taking or driving of a motor vehicle in violation of California Vehicle Code § 10851, on or about January 6, 2020; (5) evading a peace officer in violation of California Vehicle Code § 2800.2, on or about October 23, 2020; (6) felon in possession of a firearm in violation of California Penal Code § 29800(a), on or about October 23, 2020; (7) unlawful taking or driving of a motor vehicle in violation of California Vehicle Code § 10851, on or about October 23, 2020; (8) possession of a weapon by a prisoner in violation of California Penal Code § 4502, on or about October 23, 2020; (9) assault by means likely to cause great bodily injury in violation of California Penal Code § 245(a)(4), on or about September 29, 2021; and (10) possession of a controlled substance for sale in violation of California Health & Safety Code § 11378, on or about April 3, 2023. *Id.* at 1–2.

Rocha filed a motion to dismiss the single count in the indictment, arguing that § 922(g)(1) is unconstitutional under the Second Amendment as applied to him. Doc. 18 ("MTD"). In his motion to dismiss, Rocha relied on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), which clarified the framework for

1  analyzing Second Amendment challenges to firearm regulations, as well as the Ninth Circuit's
2  subsequent (but now-vacated) decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024),
3  *vacated for rehearing en banc*, 108 F.4th 786 (9th Cir. 2024), which applied *Bruen* and found
4  § 922(g)(1) unconstitutional as applied to the defendant in that case. *Id.* at 3–6.  Shortly after
5  defendant filed his motion, the Supreme Court issued its decision in *United States v. Rahimi*, 144
6  S. Ct. 1889 (2024), applying the framework it set out in *Bruen* to a challenge to 18 U.S.C.
7  § 922(g)(8).  This court permitted the parties to file amended briefings addressing the effect of
8  *Rahimi* on the present case.  Doc. 23.  On July 1, 2024, defendant filed an update to his motion to
9  dismiss.  Doc. 24.  The government filed an opposition, to which defendant replied.  Docs. 29, 31.
10      On July 18, 2024, the court held a hearing on the motion to dismiss.  Doc. 34.  However,
11 the day before, the Ninth Circuit vacated its prior opinion in *Duarte* and set that case for
12 rehearing en banc.  *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), *vacated for rehearing*
13 *en banc*, 108 F.4th 786 (9th Cir. 2024).  The motion hearing was therefore continued to allow the
14 parties time to file supplemental briefing.  Doc. 34.
15      On August 5, 2024, Rocha filed a supplemental memorandum in support of his motion to
16 dismiss.  Doc. 38 ("Mem.").  The government also filed supplemental briefing, and Rocha
17 replied.  Docs. 41 ("Opp'n"), 44 ("Reply").  The court held a hearing on September 16, 2024.
18 Doc. 45.

19 **II.    DISCUSSION**

20      The Second Amendment reads: "A well regulated Militia, being necessary to the security
21 of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const.
22 amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of*
23 *Chicago*, 561 U.S. 742 (2010), the Supreme Court "recognized that the Second . . . Amendment
24 protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-
25 defense."  *Bruen*, 597 U.S. at 8.  In *Bruen*, the Court employed *Heller*'s "text and history"
26 approach to conclude that the Second Amendment protects an "individual's right to carry a
27 handgun for self-defense outside the home."  *See id.* at 8, 22.  While each case in this line of
28 jurisprudence broadened the understanding of the scope of the Second Amendment, the Court

3

1  explained in each that "like most rights," the Second Amendment right "is not unlimited." *Id.* at
2  626.

3  In *Rahimi*, the Court recognized one such limitation, holding that this Nation's historical
4  "tradition of firearm regulation allows the Government to disarm individuals who present a
5  credible threat to the physical safety of others." 144 S. Ct. at 1902. *Rahimi* involved a challenge
6  to 18 U.S.C. § 922(g)(8), a statute which "prohibits an individual subject to a domestic violence
7  restraining order from possessing a firearm if that order includes a finding that he 'represents a
8  credible threat to the physical safety of an intimate partner,' or a child of the partner . . . ." *Id.* at
9  1894 (quoting 18 U.S.C. § 922(g)(8)).

10  Rocha challenges a different provision of the same statute, 18 U.S.C. § 922(g)(1). *See*
11  Mem. Section 922(g)(1) prohibits felons from possessing firearms, and Rocha does not dispute
12  that the statute applies to him. *See generally* Mem.; Amended MTD; MTD. Rather, he argues
13  that § 922(g)(1) is unconstitutional as applied to him because it is inconsistent with this Nation's
14  historical tradition of firearm regulation. Mem. at 6–8.

15  The government counters that the Ninth Circuit already upheld § 922(g)(1) against a post-
16  *Heller* Second Amendment challenge in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010),
17  and that this court is bound by *Vongxay* because it is consistent with the Supreme Court's later
18  decisions in *Bruen* and *Rahimi*. Opp'n at 1–4. In *Vongxay*, the Ninth Circuit explained that
19  *Heller* recognized that some individuals were "disqualified from the exercise of Second
20  Amendment rights." 594 F.3d at 1115 (quoting *Heller*, 554 U.S. at 635). "The [*Heller*] Court
21  explained how such a disqualification could occur, stating . . . that 'nothing in our opinion should
22  be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons
23  and the mentally ill . . . .'" *Id.* (quoting *Heller*, 554 U.S. at 626). "The [*Heller*] Court further
24  noted that '[w]e identify these *presumptively lawful regulatory measures* only as examples; our
25  list does not purport to be exhaustive.'" *Id.* (quoting *Heller*, 554 U.S. at 627 n.26). The *Vongxay*
26  court therefore concluded that "felons are categorically different from the individuals who have a
27  right to bear arms," and the government can disarm them consistent with the Second
28  Amendment's protections. *Id.*

4

This court must follow *Vongxay* unless it has been "effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). A Ninth Circuit decision is "effectively overruled" only "where the reasoning or theory of [the decision] is clearly irreconcilable with the reasoning or theory of an intervening higher authority." *Id.* Rocha argues that *Vongxay* is irreconcilable with *Bruen* and *Rahimi*, and that the latter two decisions dictate the dismissal of the single count in the indictment. Mem. at 6–8. The court therefore must decide whether *Vongxay* is "clearly irreconcilable" with *Bruen* and *Rahimi*.

In *Bruen*, the Court clarified the framework for assessing Second Amendment challenges, explaining that the two-step test employed by most federal courts of appeals after *Heller* improperly utilized means-end scrutiny. 597 U.S. at 17. *Bruen* explained that courts should instead consider only constitutional text and history: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must [then] demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Courts' historical inquiry "requires 'reasoning by analogy,'" *id.*, to find that a modern law "is 'relevantly similar' to laws that our [Nation's] tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances,'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29). The two "central considerations" are "how" the government's historical analogue burdened the individual's Second Amendment right and "why" it did so. *Bruen*, 597 U.S. at 30. "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or 'historical twin.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29).

*Vongxay* is not clearly irreconcilable with *Bruen* and *Rahimi*. Although it pre-dates both of those decisions, it did not employ the two-step means-end scrutiny test abrogated by *Bruen*. *See Vongxay*, 594 F.3d at 1114–15.[1] Rather, *Vongxay* held that felons are "categorically

---

[1] Rocha contends that *Vongxay* relied on both pre-*Heller* Ninth Circuit opinions and post-*Heller* opinions from other courts of appeals which utilized means-ends scrutiny in reaching its holding that § 922(g)(1) is constitutional. Reply at 4–5. Rocha asserts that this renders *Vongxay* clearly irreconcilable with *Bruen*, which abrogated opinions on which *Vongxay* relied. *See id.* To the contrary, however, *Vongxay* found that "felons are categorically different" based on *Heller*'s holding that prohibitions on felons' possession of firearms are "presumptively lawful," before

5

different." *Id.* at 1115.

*Bruen* and *Rahimi* confirmed this point. In its opening sentence, *Bruen* explained that the Second Amendment protects the right of an "ordinary, law-abiding citizen" to keep and bear arms. *Bruen*, 597 U.S. at 8. The *Bruen* majority went on to repeat the "law-abiding citizen" phrase no less than eleven times throughout its opinion. *See id.* at 9, 15, 26, 29, 30, 31, 38, 60, 70. The *Bruen* majority used the phrase when announcing the new framework and when announcing its holding. *See, e.g.*, *id.* at 29 ("*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a *law-abiding citizen's* right to armed self-defense." (emphasis added)). Additionally, Justice Kavanaugh, with whom the Chief Justice joined, concurred to emphasize that the presumptive lawfulness of felon firearm bans was a substantive "limit[] of the Court's decision," *id.* at 79–81 (Kavanaugh, J., concurring), and not dicta, *but see Rahimi*, 144 S. Ct. at 1944 n.7 (Thomas, J., dissenting).

The *Rahimi* decision – addressing the defendant's argument that § 922(g)(8) was unconstitutional because it prohibited him from possessing a firearm in the home for self-defense – stated that "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, [*Heller*] stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi*, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626, 627, n.26). This statement is all the more noteworthy because Rahimi asserted a facial challenge to § 922(g)(8). *Id.* at 1898. On a facial challenge, a defendant must "establish that no set of circumstances exists under which the Act would be valid." *Id.* (citations omitted). The Court's explanation that bans on the possession of firearms by felons are "presumptively lawful" was part of its basis for rejecting Rahimi's claim that *Heller* protected all possession of firearms in the home for self-defense. It

---

turning to those other opinions. *See Vongxay*, 594 F.3d at 1115 (noting that the defendant argued that *Heller*'s statement was non-binding "dicta," but explaining that, in fact, *Heller*'s statement was binding). *Vongxay* only then turned to those other opinions, to determine whether there was any "impact [on its conclusion from] other case law." *Id.* Given that the court could have ended its inquiry at the discussion about whether the language from *Heller* was binding, its additional discussion of other opinions that utilized means-end scrutiny does not render it clearly irreconcilable with *Bruen*.

served as an example of when an individual could constitutionally be prohibited from possessing a firearm in the home.

In *Vongxay*, the Ninth Circuit addressed and rejected the argument that the *Heller* decision's statement was merely dicta:

> Vongxay [] contends that the Court's language about certain long-standing restrictions on gun possession is dicta, and therefore not binding. We disagree. Courts often limit the scope of their holdings, and such limitations are integral to those holdings. Indeed, "[l]egal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling." *Penuliar v. Mukasey,* 528 F.3d 603, 614 (9th Cir.2008); *see also* Black's Law Dictionary 1100 (7th ed.1999) (defining dictum as a statement in an opinion that is "unnecessary to the decision in the case and therefore not precedential").

594 F.3d at 1115. *Rahimi* supports this conclusion and is not clearly irreconcilable with *Vongxay*.

Rocha nonetheless argues that *Vongxay* is clearly irreconcilable with *Bruen* and *Rahimi* because it failed to employ the text and history framework utilized in those cases. *See* Mem. at 3–6. However, the court in *Vongxay* clearly looked to history, including its "examination of . . . historical gun restrictions," to support its holding.[2] *Id.* at 1116. For example, the court explained that felons "historically have been[] explicitly prohibited from militia duty." *Id.* at 1117 (citing D.C. Code § 49–401). While the court recognized that "the historical questions have not been definitively resolved" by scholars, *id.* at 1117 (citing C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 714–28 (2009)), it credited historical evidence considered by other courts and historians, *see id.* at 1117 (citing *Parker v. Dist. of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007) (examining historical restrictions on felons in the militia); Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 L. & Contemp. Probs. 143, 146 (1986); Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995)).

---

[2] There was no need in *Vongxay* to analyze the text of the Second Amendment in detail, because in *Vongxay* the government did not argue that felons are not part of "the people" whom the Second Amendment protects or that the firearm at issue was not a covered "arm." *See* Brief of Appellee at 10–22, *United States v. Vongxay*, No. 09-10072 (9th Cir. Aug. 21, 2009). The *Vongxay* decision relied primarily on history to support its holding that the government's disarming of felons was consistent with the Second Amendment's protections.

1  Rocha argues that *Vongxay* did not look to *enough* history and did not look to the *right*
2  history. *See* Reply at 2, 5–7 ("The length, depth, and complexity of the historical analysis
3  employed . . . in both *Bruen* and *Rahimi* only reaffirms . . . that *Vongxay* is clearly
4  irreconcilable. . . . [*Vongxay* relied] solely on *Heller* . . . and referenced only a couple of law
5  review articles, [which] simply does not suffice."). But *Bruen* acknowledged that "historical
6  analysis can be difficult; it sometimes requires resolving threshold questions, and making
7  nuanced judgments about which evidence to consult and how to interpret it." 597 U.S. at 25
8  (quoting *McDonald*, 561 U.S. at 803–04 (Scalia, J., concurring)). While Rocha criticizes the
9  extent of *Vongxay*'s historical analysis, he cannot say that *Vongxay* did *not* look to history –
10 because it did.

11 The court is also persuaded by the numerous district courts in the Ninth Circuit which
12 have concluded that *Vongxay* remains good law after *Bruen*. *See, e.g.*, *United States v.*
13 *Broadbent*, No. 2:19-cr-00155-DJC, 2023 WL 6796468 (E.D. Cal. Oct. 13, 2023); *United States*
14 *v. Davis*, No. 1:21-cr-00206-ADA-BAM-1, 2023 WL 2505039 (E.D. Cal. Mar. 14, 2023); *United*
15 *States v. Pugh*, No. 2:21-cr-00451-ODW, 2024 WL 457139 (C.D. Cal. Feb. 6, 2024); *United*
16 *States v. Yates*, No. 23-cr-00318-AMO-1, 2024 WL 69072 (N.D. Cal. Jan. 5, 2024); *United States*
17 *v. Hill*, 629 F. Supp. 3d 1027 (S.D. Cal. 2022); *United States v. Costigan*, No. 3:23-cr-00069-
18 TMB-KFR, 2024 WL 623942 (D. Alaska Feb. 14, 2024); *United States v. Jessup*, No. CR-23-
19 00223-001-PHX-DWL, 2024 WL 457139, 2024 WL 4108007 (D. Ariz. Sept. 6, 2024); *United*
20 *States v. Martinez*, No. 2:22-cr-00135-GMN-NJK-1, 2024 WL 2014215 (D. Nev. May 6, 2024);
21 *United States v. Miller*, CR 24-72-BLG-SPW, 2024 WL 4165135 (D. Mont. Sept. 12, 2024).

22 This remains an evolving area of the law, as evidenced by the procedural history of this
23 case. A future decision in the *Duarte* case will undoubtedly provide further guidance on the
24 constitutionality of § 922(g)(1). *See* Doc. 89, *United States v. Duarte*, No. 22-50048 (rehearing
25 en banc scheduled for December 9, 2024). Nevertheless, this court must faithfully apply existing
26 precedent of the Court of Appeals where it is not clearly irreconcilable with subsequent Supreme
27 Court decisions. *See Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) ("The clearly
28 irreconcilable requirement is a high standard . . . [and it] is not enough for there to be some

tension between the intervening higher authority and prior circuit precedent . . . ."). *Vongxay* is not clearly irreconcilable with *Bruen* and *Rahimi* and this court must follow *Vongxay* as binding precedent. *See id.* Accordingly, this court is bound by *Vongxay* and holds that 18 U.S.C. § 922(g)(1) is constitutional as applied to Rocha.

### III. CONCLUSION

Based upon the foregoing, defendant's motion to dismiss, Docs. 24, 38, is **DENIED.**

IT IS SO ORDERED.

Dated:   September 19, 2024

_____
UNITED STATES DISTRICT JUDGE

9